IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| James Eric Jones,<br><br>    PETITIONER<br><br>v.<br><br>United States of America,<br><br>    RESPONDENT | Crim. No. 4:06-cr-01238-TLW-1<br>C/A No. 4:16-cv-01447-TLW<br><br><br>**Order** |

This matter comes before the Court for consideration of the pro se petition to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by Petitioner James Eric Jones. For the reasons stated below, the Court dismisses the petition.

## I.     Factual and Procedural History

The Government charged Petitioner with being a felon in possession of a firearm and ammunition, and a jury convicted him on April 10, 2007 after a two-day trial. ECF Nos. 2, 58. The underlying facts of the case, as set forth in the PSR, are as follows:

> On November 1, 2006, at approximately 12:55 a.m., Officer Bailey with [Mullins Police Department (MPD)], who was on routine patrol in Mullins, South Carolina, observed a blue Buick exceeding the posted speed limit of 25 miles per hour, and swerving recklessly on both sides of Seaboard Avenue. The officer initiated a traffic stop at Seaboard Avenue and West Dogwood Street by activating his blue lights. The vehicle failed to stop, ran a stop sign, and increased its speed before turning onto Miller's Road.
>
> The chase continued down Miller's Road until the driver of the vehicle jammed on the brakes and attempted to turn left onto Davis Lane. Officer Bailey's vehicle struck the Buick on the driver's side and both vehicles came to a stop.
>
> Officer Bailey observed the passenger of the vehicle as he crawled through the passenger window of the vehicle and fled into a nearby wood line. The passenger was . . . never apprehended and remains unidentified. The driver of the vehicle, later identified as [Petitioner], also exited the Buick through the passenger window.

1

However, instead of attempting to flee, [Petitioner] turned around and began to fight Officer Bailey.

Officer Bailey and [Petitioner] began to fight on the hood of the Buick. [Petitioner] was on top of the officer until both men fell to the ground. Officer Bailey landed on his stomach and when he stood up, [Petitioner] pushed him against his patrol vehicle from behind. Officer Bailey pulled out his pepper spray. At that time, [Petitioner] put a firearm to the left side of Officer Bailey's head and made a statement to the effect of: "If you move or grab anything, I'll kill you."

As Officer Bailey dropped his pepper spray, he felt [Petitioner] start to pull on his (Bailey's) duty belt. Officer Bailey stated he thought [Petitioner] was going for his duty weapon, so he (Bailey) drew his duty weapon first. At that time, Officer Bailey heard two clicks from [Petitioner's] weapon, but the gun did not fire.

Officer Bailey pointed his duty weapon in [Petitioner's] direction, between Bailey's left arm and torso, and fired one round into the left side of [Petitioner's] abdomen. As Officer Bailey stood up and turned around, [Petitioner] was still standing, but had dropped his firearm.

[Petitioner] then grabbed the barrel of Officer Bailey's duty weapon and tried to turn it towards the officer's face. Officer Bailey locked his hand around the slide so the weapon would not fire. The two men went to the ground again as they fought over Officer Bailey's firearm. During that time, [Petitioner] continued to reach for his own weapon, but Officer Bailey was able to toss the firearm away from the scene and out of [Petitioner's] reach. After Officer Bailey threw [Petitioner's] weapon, [Petitioner] yelled repeatedly for the unidentified passenger to get the gun and "shoot him!" meaning Officer Bailey.

Officer Bailey stated that while on his stomach on the ground, he fired another shot from his duty weapon away from [Petitioner], because he wanted to clear the gun and keep it out of [Petitoiner's] reach. Officer Bailey indicated that he eventually jammed his duty weapon into the dirt under his body, in an effort to disable it and protect the weapon. [Petitioner] continued to fight Officer Bailey until Lieutenant Oakley with MPD arrived on the scene.

Lieutenant Oakley was originally at a domestic call when he heard two shots coming from the direction where Officer Bailey and the suspect's vehicle had been traveling. He responded to Officer Bailey's location on Miller's Road and observed [Petitioner] on top of Officer Bailey. [Petitioner] appeared to be trying to choke Officer Bailey. Lieutenant Oakley stated he did not pull out his own duty weapon because Officer Bailey yelled that [Petitioner] no longer possessed a firearm. He also stated he was not sure it was safe to fire a shot at [Petitioner] without striking Officer Bailey.

Lieutenant Oakley then shoved [Petitioner] off of Officer Bailey. [Petitioner] attempted to get up five to ten times and Lieutenant Oakley struck the defendant in

the face with his fist until [Petitioner] was stunned enough to be handcuffed and taken into custody.

[Petitioner's] firearm, a Walther, model PPK/S, .380 caliber pistol (Serial No. 048835), was located and taken into evidence at the scene by SLED. The firearm was not listed as stolen. The firearm was fully loaded with one round in the chamber and the safety was on.

PSR ¶¶ 6–16.

The Court sentenced Petitioner as an armed career criminal under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), to a within-guidelines term of 456 months incarceration.[1] ECF No. 88. His total offense level was 41, which included a cross-reference under § 2A2.1 to attempted murder, a six-level adjustment under § 3A1.2(c)(1) for assaulting an officer during flight, and a two-level adjustment under § 3C1.2 for reckless endangerment during flight.[2] PSR ¶¶ 67, 68, 71. He had fourteen criminal history points, establishing a criminal history category of VI, even absent the ACCA classification. PSR ¶ 44. His total offense level of 41 and his criminal history category of VI resulted in an advisory guideline range of 360 months to life.

At that time, his following South Carolina convictions were considered ACCA predicate offenses:

(1) Attempted Burglary;[3]

(2) Burglary, 2nd Degree;[4]

---

[1] The Court originally sentenced him to 520 months incarceration, but several days after imposing that sentence, the Court resentenced him to 456 months pursuant to Rule 35(a). ECF Nos. 86, 88.

[2] The PSR also included a two-level adjustment under § 3C1.1 for obstruction of justice, PSR ¶ 70, but the Court sustained his objection to that adjustment.

[3] "[O]n October 22, 1996 at approximately 5:30 a.m., the defendant attempted to enter the residence of Regina Bristow in Marion, South Carolina, by tearing two screens from around the windows." PSR ¶ 38.

[4] "[O]n October 30, 1996 at approximately 10:45 p.m., the defendant entered the residence of Christine Gordon in Marion County, South Carolina. Once inside, the defendant stole one

3

(3) Strong Arm Robbery and Assault and Battery of a High and Aggravated Nature (ABHAN);[5]

(4) Strong Arm Robbery and ABHAN;[6] and

(5) Assault on an Officer.[7]

Petitioner was released from custody for these convictions on September 1, 2006, and he committed the instant offense on November 1, 2006—only two months later. PSR ¶¶ 6, 43.

Petitioner filed a direct appeal challenging his classification as an armed career criminal, but the Fourth Circuit affirmed his conviction and sentence. *United States v. Jones*, 312 F. App'x 559 (4th Cir. 2009). The Supreme Court denied his petition for a writ of certiorari. *Jones v. United States*, 557 U.S. 927 (2009).

On February 5, 2010,[8] Petitioner filed a pro se petition under 28 U.S.C. § 2255, which this Court dismissed on the merits after briefing. ECF Nos. 113, 127. He filed a direct appeal, but the Fourth Circuit affirmed. *United States v. Jones*, 419 F. App'x 365 (4th Cir. 2011). The Supreme Court denied his petition for a writ of certiorari. *Jones v. United States*, 565 U.S. 933 (2011).

On or about April 25, 2016, as required by 28 U.S.C. § 2244, Petitioner filed a pro se

---

television." PSR ¶ 39.

[5] "[O]n June 30, 2002, at approximately 3:40 a.m., the defendant knocked Jessie White off of a bicycle, beat him about the face with his fist, and robbed him of $2.00 and a lighter, in Mullins, South Carolina. The victim suffered a broken jaw from this incident." PSR ¶ 40.

[6] "[O]n August 4, 2002, at approximately 6:07 a.m., the defendant knocked James Moody off of a bicycle, beat him about the face, kicked him in the ribs, and robbed him of his wallet which contained $444.00, in Mullins, South Carolina. The victim suffered broken ribs and a broken jaw from this incident." PSR ¶ 41.

[7] "[O]n August 10, 2002, at approximately 12:39 a.m., the defendant resisted the efforts of Sgt. Mostowski as he placed the defendant under arrest. The defendant refused to place his hands behind his back, shoved a chair with his foot, and attempted to hit the officer with the chair." PSR ¶ 41.

[8] Filing date under *Houston v. Lack*, 487 U.S. 266 (1988).

motion in the Fourth Circuit requesting authorization to file a successive § 2255 petition to seek resentencing in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*). *In re Jones*, No. 16-392 (4th Cir.), ECF No. 2. On May 5, 2016, the Fourth Circuit granted his motion, authorizing him to file a successive § 2255 petition. *Id.*, ECF No. 7-2. His petition was docketed in this Court the following day. ECF No. 164.

In Petitioner's pro se petition, he seeks to be resentenced without the ACCA enhancement in light of *Johnson II*.[9] *Id.* The Government filed a response in opposition and a motion for summary judgment, arguing that his two robbery convictions and his assault on an officer conviction remain ACCA predicate offenses after *Johnson II*.[10] ECF Nos. 173, 174. He then filed a response in opposition to the Government's summary judgment motion, ECF No. 176, and several months later, a notice of supplemental authority addressing two additional cases, ECF No. 178.

This matter is now ripe for decision.

## II. 28 U.S.C. § 2255

Title 28, Section 2255 of the United States Code provides that a prisoner in custody under sentence of a federal court may file a petition in the court that imposed the sentence to vacate, set aside, or correct the sentence. A petitioner is entitled to relief under § 2255 if he proves by a preponderance of the evidence one of the following: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to

---

[9] Two weeks after Petitioner filed his pro se petition, counsel with the Federal Public Defender's Office noticed his appearance on Petitioner's behalf. ECF No. 166.

[10] The Government does not dispute that his attempted burglary, burglary, and two ABHAN convictions no longer count as predicates.

5

impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam). "The scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" *Leano v. United States*, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting *United States v. Mikalajunas*, 186 F.3d 490, 495–96 (4th Cir. 1999)).

In deciding a § 2255 petition, a court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's filings, and finds that no hearing is necessary.

## III. Discussion

The ACCA provides that a defendant convicted of being a felon in possession of a firearm or ammunition who has at least three prior convictions for "a violent felony or a serious drug offense" faces a mandatory minimum of 15 years incarceration. 18 U.S.C. § 924(e)(1).[11] This case involves the definition of a "violent felony," which is, in relevant part, as follows:

> any crime punishable by imprisonment for a term exceeding one year . . . that—
> 
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> 
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of

---

[11] A defendant who is not an armed career criminal faces a statutory maximum of ten years incarceration. 18 U.S.C. §§ 922(g)(1), 924(a)(2).

physical injury to another

18 U.S.C. § 924(e)(2)(B). There are three parts to this definition:

(1) the force clause, which is § 924(e)(2)(B)(i) ("has as an element the use, attempted use, or threatened use of physical force against the person of another");[12]

(2) the enumerated clause, which is the first part of § 924(e)(2)(B)(ii) ("is burglary, arson, [] extortion, [or] involves use of explosives");

(3) the residual clause, which is the last part of § 924(e)(2)(B)(ii) ("otherwise involves conduct that presents a serious potential risk of physical injury to another").

As noted above, the Government does not allege that Petitioner's attempted burglary, burglary, and two ABHAN convictions continue to count as predicates. This is accepted as correct in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), *Welch v. United States*, 136 S. Ct. 1257 (2016), *Johnson II*, *Descamps v. United States*, 570 U.S. 254 (2013), *United States v. Hall*, 684 F. App'x 333 (4th Cir. 2017), and *United States v. Hemingway*, 734 F.3d 323 (4th Cir. 2013). Conversely, there is no question that his two prior robbery convictions still count as predicates. *See United States v. Doctor*, 842 F.3d 306, 312 (4th Cir. 2016). Thus, the only question in this case is whether his conviction for Assault on an Officer in violation of S.C. Code Ann. § 16-9-320(B) remains a third predicate under the force clause.[13]

In considering whether a particular conviction is a "violent felony," a court must first determine whether to apply the categorical or modified categorical approach. *See generally Mathis*, 136 S. Ct. at 2247–49 (explaining the history and application of the categorical and

---

[12] This clause is also sometimes referred to as the elements clause.

[13] It cannot count as a predicate under the residual clause, as the Supreme Court has concluded that the residual clause is unconstitutionally vague. *Johnson II*, 135 S. Ct. at 2563; *see also Welch*, 136 S. Ct. at 1268 (concluding that *Johnson II* applies retroactively on collateral review).

modified categorical approaches). If disjunctive language in a statute creates alternative elements (thereby creating separate offenses), then the statute is divisible and the modified categorical approach applies. *See id.* But if disjunctive language in the statute merely describes alternative means of committing a single offense, then the statute is not divisible and the categorical approach applies. *See id.* While these principles sound clear and fundamental, their application is not always so straightforward. *See, e.g.*, *id.* at 2264 (Breyer, J., dissenting) ("What was once a simple matter will produce a time-consuming legal tangle."); *Omargharib v. Holder*, 775 F.3d 192, 200 (4th Cir. 2014) (Niemeyer, J., concurring) ("Because of the ever-morphing analysis and the increasingly blurred articulation of applicable standards, we are being asked to decide, without clear and workable standards, whether disjunctive phrases in a criminal law define alternative *elements* of a crime or alternative *means* of committing it." (emphasis in original)).

The statute under which Petitioner was convicted, S.C. Code Ann. § 16-9-320(B), provides as follows:

> It is unlawful for a person to knowingly and wilfully assault, beat, or wound a law enforcement officer engaged in serving, executing, or attempting to serve or execute a legal writ or process or to assault, beat, or wound an officer when the person is resisting an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not. A person who violates the provisions of this subsection is guilty of a felony and, upon conviction, must be fined not less than one thousand dollars nor more than ten thousand dollars or imprisoned not more than ten years, or both.

The phrase "assault, beat, or wound" arguably does not create separate offenses. Rather, this Court, based on the state of the law, finds that the phrase sets out alternative means by which a person can commit a single offense. *See Stevenson v. State*, 516 S.E.2d 434, 437 (S.C. 1999) (holding that a conviction for violating § 16-9-320(B) "requires proof that a person knowingly and wilfully assaulted, beat, or wounded a law enforcement officer"). Noting as Justice Breyer and Judge Neimeyer have that the outcome is not always clear, the Court concludes that the categorical

8

approach applies to the statute.

The next step in the process is to determine whether "'the minimum conduct necessary for a violation' under state law" qualifies as a violent felony under the force clause. *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (quoting *Castillo v. Holder*, 776 F.3d 262, 267 (4th Cir. 2015)). Importantly, the "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). As noted above, the force clause applies to an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). Finally, the phrase "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (*Johnson I*). Thus, the ultimate question in this case is whether the minimum conduct to which the state would realistically apply § 16-9-320(B) necessarily involves the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person.

In determining the meaning of "assault," the Court must look to how South Carolina courts define it. *See Doctor*, 842 F.3d at 309. The South Carolina Supreme Court defines assault as "an unlawful attempt or offer to commit a *violent* injury upon the person of another, coupled with a present ability to complete the attempt or offer by a battery." *State v. Mims*, 335 S.E.2d 237, 237 (S.C. 1985) (emphasis added); *see also In re McGee*, 299 S.E.2d 334, 334 (S.C. 1983) ("[I]f by words and conduct a person intentionally creates a reasonable apprehension of bodily harm, it is an assault."); *State v. Jones*, 130 S.E. 747, 751 (S.C. 1925) ("An 'assault' is an unlawful attempt,

9

coupled with a present ability, to commit a violent injury upon the person of another."), *overruled on other grounds by State v. Foust*, 479 S.E.2d 50 (S.C. 1996). Notably, these slightly varying definitions all refer to threats or attempts to cause a victim to suffer a violent injury or bodily harm, which is consistent with *Johnson I*'s definition of "violent force." *See Doctor*, 842 F.3d at 309 ("There is no meaningful difference between a victim feeling a threat of bodily harm and feeling a threat of physical pain or injury.").

Petitioner makes much of the fact that assault under South Carolina law can be committed without physical contact with the victim. That is true. *See, e.g.*, *Mims*, 335 S.E.2d at 237 ("[Assault] differs from assault and battery in that there is no touching of the victim."). It is also not relevant to the analysis. As the Government points out, a predicate offense does not come under the force clause only if it involved the use of force; the force clause applies equally if the predicate offense involved the *attempted* use or *threatened* use of force. *See* 18 U.S.C. § 924(e)(2)(B)(i). The fact that a person can assault a victim without touching him is of no consequence.

There is some reference in South Carolina law to assault being merely an "attempted battery." *See State v. Sutton*, 532 S.E.2d 283, 285 (S.C. 2000) ("Assault has been defined as an 'attempted battery' or an unlawful attempt or offer to commit a violent injury upon another person, coupled with the present ability to complete the attempt or offer by a battery."). "Battery," in turn, is defined as "the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree." *Mellen v. Lane*, 659 S.E.2d 236, 244 (S.C. Ct. App. 2008) (citation omitted). Thus, Petitioner asserts that a person can commit a violation of § 16-9-320(B) merely by "touch[ing] the police officer, however slightly, in a rude or angry manner." ECF No. 176 at 15. Based on *Sutton*, he presumably further believes that merely *attempting* to slightly touch a

10

police officer in a rude or angry manner would be an assault and therefore a violation of § 16-9-320(B), including the potential ten-year sentence that goes along with it. Nothing found in South Carolina case law indicates that this is a "realistic probability," rather than a "hypothetical possibility," and believing otherwise requires an energetic "legal imagination." *Moncrieffe*, 569 U.S. at 191.

The Court's conclusion that Petitioner's theory—that slightly touching (or attempting to slightly touch) a police officer in a rude or angry manner—is, at best, a mere hypothetical possibility is well-supported by the available case law that specifically involves § 16-9-320(B). The facts of each reported case involving that statute are far afield from the minimal conduct that Petitioner contends would support the statute's application. *See Robinson v. S.C. Dep't of Pub. Safety*, No. 2:05-3198-SB-RSC, 2010 WL 6422940, at *4 (D.S.C. Dec. 28, 2010) (involving an underlying conviction where the defendant drove his car at a high rate of speed directly at an officer); *Woods v. Cashier*, No. 0:05-2211-DCN-BM, 2006 WL 2385275, at *2–5 (D.S.C. Aug. 17, 2006) (involving an underlying conviction where the defendant kicked an officer in the chest, choked another officer, and struck a third officer in the chest and back of the head); *Stevenson*, 516 S.E.2d at 437 (involving the defendant obtaining an officer's gun while resisting arrest and shooting one officer in the knee and another officer in the chest, as well as shooting himself); *State v. Ritter*, 370 S.E.2d 610, 610 (S.C. 1988) (involving the defendant grabbing one deputy by the throat while attempting to grab another deputy's gun, resulting in an injury to one of the deputies); *State v. Garvin*, 533 S.E.2d 591, 592 (S.C. Ct. App. 2000) (involving the defendant striking a detective in the face, resulting in injuries requiring hospital treatment); *State v. Tyndall*, 518 S.E.2d 278, 280–81 (S.C. Ct. App. 1999) (involving the defendant hitting two officers with a hammer and

threatening to kill them).[14]

Also, while the facts of Petitioner's underlying conviction cannot be considered in deciding whether the statute is an ACCA predicate under the categorical approach, it is worth noting that those facts provide no support for his theory that a slight touching (or attempted slight touching) of an officer in a rude or angry manner would support a violation of the statute. *See* PSR ¶ 41 ("The defendant refused to place his hands behind his back, shoved a chair with his foot, and attempted to hit the officer with the chair.").

Finally, the Court notes that the statute provides for a sentence of up to ten years incarceration. S.C. Code Ann. § 16-9-320(B). This indicates that the statute is intended to cover serious, violent conduct against law enforcement officers, not attempted slight offensive touchings.

In light of the above analysis, the Court concludes that the minimum conduct to which South Carolina would realistically apply § 16-9-320(B) necessarily involves the use, attempted use, or threatened use of force capable of causing physical pain or injury to another person. Thus, Petitioner's conviction for violating § 16-9-320(B) remains a valid predicate conviction for ACCA purposes.[15] Applying the categorical approach does not exclude a conviction for the violent offense of Assault on an Officer. The caselaw and analysis set forth supports that conclusion. Because he also has two strong arm robbery convictions that remain valid ACCA predicates, *see Doctor*, 842 F.3d at 312, he is still an armed career criminal and is therefore not entitled to habeas

---

[14] None of the other reported cases involving § 16-9-320(B) set forth a statement of the underlying facts that is sufficiently detailed to impact the analysis in this case. *See, e.g.*, *State v. Bryson*, 591 S.E.2d 637, 638 (S.C. Ct. App. 2003) (describing "a brief struggle" with two deputies).

[15] The Court carefully considered, but is not persuaded by, the contrary reasoning and decisions in *Hampton v. United States*, No. 3:07-1517-CMC, 2016 WL 4702356 (D.S.C. Sept. 8, 2016) and *Davis v. United States*, 205 F. Supp. 3d 715 (D.S.C. 2016).

12

relief.[16]

## IV. Conclusion

For the reasons stated, the Government's Motion for Summary Judgment, ECF No. 174, is **GRANTED** and Petitioner's petition for relief pursuant to § 2255, ECF No. 164, is **DENIED**. This action is hereby **DISMISSED**.[17]

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings. In order for the Court to issue a certificate of appealability, Rule 11 requires that Petitioner satisfy the requirements of 28 U.S.C. § 2253(c)(2). The Court concludes that he has made the required showing. Accordingly, the Court will issue a certificate of appealability as to the issues raised in this petition.

**IT IS SO ORDERED**.

*s/ Terry L. Wooten*
Terry L. Wooten
Chief United States District Judge

January 11, 2018
Columbia, South Carolina

---

[16] The undersigned was the trial judge in this case. The trial testimony made clear that Officer Bailey was involved in a fight for his life with Petitioner. Had the safety on Petitioner's gun not been on or had his gun not misfired, he would have shot Officer Bailey in the head. As Petitioner's criminal record makes clear, his actions in this case were fully consistent with his violent, dangerous history and are predictive of his future dangerousness.

A 456-month sentence for Petitioner was appropriate. The Court is greatly concerned that granting him habeas relief on the facts and law presented, which would entitle him to immediate release, would create a significant risk of violence to the public.

[17] In light of the Court's ruling, the other outstanding motions in this case (ECF Nos. 155, 179, 182, 183, 190, 192, 195) are **DISMISSED AS MOOT**.